Case 3:22-cv-00282    Document 29    Filed on 11/19/24 in TXSD    Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
November 19, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| LAURALEE RICHMOND, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:22-cv-00282 |
| | § | |
| TEAM ONE CONTRACT SERVICES, L.L.C., | § | |
| | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending before me in this pregnancy discrimination case is a Motion for Summary Judgment filed by Defendant Team One Contract Services, L.L.C. ("TeamOne"). Dkt. 20. Having considered the briefing, the record, and the applicable law, I grant the motion.

## BACKGROUND

Plaintiff Lauralee Richmond began working for TeamOne on July 29, 2019 as an Operations Manager in Freeport, Texas. She held that role until she was terminated in March 2021. Richmond reported to Mark Messmer, Vice President of Human Resources, and Patsy White, Director of Safety and Compliance.

During the time period relevant to the allegations in this lawsuit, TeamOne had a contract with UPS Logistics ("UPS") to provide fleet services to support UPS's client, Chiquita, in Freeport, Texas. As an Operations Manager, Richmond managed and supervised the truck drivers and support staff at the Freeport facility. Support staff included Transportation Supervisor Jennifer Zavala and Administrative Assistant Amanda McElveen. In overseeing the safety training of drivers at the Freeport facility, Richmond conducted weekly driver observations, led monthly Comprehensive Health and Safety Process ("CHSP") meetings, and participated in weekly "Safety Action Plan" calls and quarterly safety meetings with TeamOne's corporate safety department. As part of her job responsibilities,

Richmond was also required to forward safety meeting and observation reports to UPS National Account Manager Gerald Whisman.

In March 2020, Richmond emailed White "an example of the spread sheet that [Richmond would] send to [Whisman] weekly." Dkt. 21-2 at 18. Richmond alluded to a conversation that she and White had the day before, stating that "when we spoke yesterday you stated that there should be additional forms for [TeamOne] and that the observations had to be documented in a particular manner." *Id.* Richmond disclaimed having ever seen or used such forms. White responded a few days later with the required form, stating that "we will use this form to document the driver observations going forward." *Id.* at 31.

In May 2020, TeamOne began tracking drivers' "hard brakes." Neither TeamOne nor Richmond define what constitutes a "hard brake" in their briefing. In her deposition Richmond testified that "every time you pull a hard brake, it pulls a vacuum and it triggers a GPS . . . pinpoint from where that hard brake occurred." Dkt. 21-1 at 42. Richmond had to review hard brake reporting each week and document coaching any driver with more than two hard brakes in a week. Any driver with more than two hard brakes in multiple weeks in the same month was to receive "a face-to-face counseling and re-training session" with Richmond and a safety representative, and documentation of this session was to be placed in the driver's personnel file. Dkt. 21-2 at 7.

On June 4, 2020, White emailed Richmond and Bruce Pate, another Operations Manager, copying several other TeamOne employees on her email, including Messmer and TeamOne Chief Operating Officer Jeff Hudson. In her email, White complained that neither Richmond nor Pate had sent her their dates or agendas for their second quarterly safety meeting. Hudson responded to only Richmond, telling her: "Lauralee, I need you to make safety a priority. When a message like this comes across my desk, the message I receive is that it is not important to you. I hope that is not the case." *Id.* at 146.

On October 2, 2020, Richmond informed Elizabeth Demeritte, a Human Resources Generalist at TeamOne, that she was pregnant and due in May 2021. And on October 19, 2020, Richmond reminded Messmer that she would "be out for 12-15 weeks" during her maternity leave and inquired as to the plan for covering her responsibilities while she was out. *Id.* at 98. Richmond told Messmer that Zavala would "not be able to cover the additional workload." *Id.* at 99.

On November 6, 2020, White received an email from Joseph Clevenger, a UPS Division Driver Trainer, complaining about Richmond's responsiveness. Clevenger informed White that on September 15, 2020, he "had let [Richmond] know about a driver with excessive hard brakes." Dkt. 21-5 at 17. Although Richmond had asked Clevenger if he could talk to the driver, Clevenger lamented that Richmond "never set up the call, and has not responded to any of my emails sense [sic]." *Id.* Clevenger also complained that he recently sent Richmond an email "about the excessive number of HoS [hours of service] violations [he] was finding at [Richmond's] operation," but that he had "yet to receive a response to [his] email or [his] offer to help with training for the drivers that are repeatedly getting HoS violations." *Id.* White forwarded this message to Hudson and Messmer, stating: "I'm not sure why [Richmond] asked a UPS trainer to talk to our TeamOne driver. I've not seen any coaching documents from her on hard brakes or HOS violations either. I'll report back what I find out." *Id.* at 16. Later that day White complained to Hudson that "not one single coaching document or discipline document has been turned in [sic] and we have been asking her for months on end to get them turned in. Her response was 'ok, Patsy.' She wasn't ugly but was short like always." *Id.* Hudson told White and Messmer: "Guys if you asked her to do it and had a discussion about it, take it to the next level. [Not] doing the required safety training and coaching will not be tolerated." *Id.* at 15.

One week later, on November 13, 2020, Hudson and White visited the Freeport facility. Hudson bought and personally grilled steaks for all the staff at the Freeport facility after the team went 363 days and 750,000 miles without an

3

accident. At some point after this celebration, Richmond testified that Messmer suggested to Richmond that she continue to work from home after delivering her baby via Caesarean section. Messmer denies ever making this request.

On Friday, November 20, 2020, White emailed Richmond, requesting coaching documents for hard brake violators. White reminded Richmond that TeamOne had "been tracking hard brakes since May and as of today we have not received a single coaching document." Dkt. 21-1 at 143. White said that Richmond had "indicated on many Action Plan Calls that you have the documents but you haven't had time to turn them in." *Id.* White told Richmond to have the "documents turned in by Monday afternoon" on November 23, 2020. *Id.*

On November 23, 2020, Richmond submitted one hard brake coaching document. On November 30, 2020, White informed Messmer that Richmond was "missing a total of 65 counseling documents." *Id.* at 142. Messmer replied to White, informing her that he had spoken to Richmond that evening and "told her that [he] was going to have to administer disciple [sic] to her for having 65 hard brake conservation [sic] not documented." *Id.*

On December 2, 2020, White emailed Richmond a "disciplinary document" for her "review, comments, and signature." *Id.* at 146. The document stated:

> The expectation of Managers position is to conduct coaching documents on hard brake violators. Friday the report is sent out, Monday afternoon Safety conducts the Safety Action Plan call and the report is presented and reviewed for violators. All violators are to be coached with coaching documents. The coaching is to be completed by Wednesday and sent to Safety and Patsy White. You are on the call weekly and this has been communicated to you continuously. To date you are behind by 60 coaching documents.
>
> This is an unacceptable practice and must not continue. All past due coaching documents must be completed and submitted to Safety and Patsy White by end of business on Friday 12/4/20.
>
> Coaching of the drivers and coaching documents are to be completed and sent to Safety and Patsy White by Wednesday every week to ensure compliance.

*Id.* at 147.

Richmond delivered a three-page response that same day. In her response, Richmond complained about "the TeamOne disciplinary approach to documentation" that she felt made her drivers less safe. Dkt. 21-2 at 84. Richmond pointed out that she managed "one of the most successful operations that Team One has, as well as the **number one ranked terminal in UPS**." *Id.* Richmond complained about the lack of contingency plan for her maternity leave, and Messmer's assumption that she "would just continue to work from home as quickly as possible, once post-partum." *Id.* at 85. Richmond also complained about White specifically, saying that "[t]here are other managers who have not submitted the documentation that's been requested and absolutely no phone calls have been made to them or threats of written warnings or job dismissal." *Id.* Richmond stated that her "only options are to perjure [her]self by forging documentation . . . or to continue to raise objection and explain what does and does not work and what will negatively impact [her] drivers' safety over the road." *Id.* In closing, Richmond notified TeamOne that she intended "to take the full 12 weeks of FMLA allotted to [her] by federal law." *Id.* at 86.

On December 9, 2020, Clevenger again emailed White to complain about the HoS violations at Richmond's operation. That same day, Richmond sent an email to Messmer, rejecting the suggestion he made "3 weeks ago" that Richmond "work from home post[-]surgery, with a newborn." Dkt. 25 at 116.

On December 21, 2020, Clevenger again emailed TeamOne to complain about a driver's HoS violation and other problems with the driver's log. Clevenger observed that "[i]f these log violation[s] where [sic] discovered in a [Department of Transportation] audit or during an inspection that would be a total of 33 points against the driver and UPS." Dkt. 21-5 at 48. Clevenger's email prompted Richmond to explain why part of the log was "not a falsification." *Id.* Clevenger responded with a lengthy retort to Richmond's justification, concluding that "[w]ith this the total [Compliance, Safety, and Accountability] points for the day is now 51." *Id.* at 51.

On January 6, 2021, Clevenger responded to his December 21, 2020 exchange with Richmond to complain about another HoS violation. Clevenger asked: "Has any training been done with the drivers to ensure they understand the hours of service?" *Id.* at 50. Richmond promised to follow up.

On February 12, 2021, Clevenger again emailed TeamOne to complain about HoS violations at Chiquita. White forwarded Clevenger's message to Hudson and Messmer telling them: "We have to have another sit down with Lauralee." *Id.* at 55. Hudson told White to "[k]eep it constructive with Lauralee. There is a problem so how do we fix it." *Id.* at 54. Hudson also suggested to Messmer that he ask Richmond "to detail for [him] how she will endure [sic] this doesn't happen going forward and plan to get [Zavala] trained. It's a great time to get [Zavala] up to speed on all things she doesn't know before [Richmond] is out [on maternity leave]." *Id.* Messmer responded to Hudson later that evening that he received an "employee compliant [sic] about [Richmond] yesterday," and assured Hudson that he and Senior Client Services Manager Julio Gonzalez would deal with it on Monday. *Id.*

On March 4, 2021, while Richmond was out of the office, White asked Zavala whether the CHSP meeting for March had been accomplished, and when the CHSP meetings in January and February occurred. Zavala responded, "What is the CHSP meeting?" *Id.* at 76. White forwarded this email to Hudson and Messmer, stating:

> [Zavala] said there has been no meetings at all except when we were down there in November . . . . Ricky Fisher (lead driver and trainer) confirmed today the last meeting they've had CHSP or otherwise was right before [Richmond's predecessor] left.
>
> [Zavala] told me this morning that [Richmond] is never in the office anymore. She's out today and tomorrow and only been in the office a few hours earlier this week. She said [Richmond] told them her baby is due early May and she may not come back from maturity [sic] leave.

*Id.* at 75. On March 5, 2021, Zavala emailed White a list of these same complaints about Richmond, stating that no CHSP meeting was held February 2021; no formal CHSP meeting had ever been held during Richmond's tenure; Richmond overworked Zavala and McElveen; Richmond asked McElveen to falsely pay a

6

driver; Richmond was never in the office; Richmond asked Zavala to work while she was home sick with COVID; and various other grievances. *See id.* at 81.

On March 10, 2021, Messmer and TeamOne Talent Manager Curtis Fitts met with Richmond. At the conclusion of this meeting, Messmer "remov[ed] [Richmond] from service based on her falsifying safety records and failing to maintain supporting documentation for observations and safety meetings." *Id.* at 92. Immediately after this meeting, Messmer met Richmond at the Freeport facility so that she could retrieve her belongings. After Richmond left the facility, she texted Messmer "several questions relating to pay, benefits and vacation." *Id.* Messmer did not respond to these texts, but forwarded them to Corporate HR. Later, Messmer asked that someone else "handle the termination phone call on 3-11-2021 as [he] was tied up with travel." *Id.*

On March 16, 2021, Gonzalez submitted an Involuntary Termination Request for Richmond. In the memorandum attached to that request, Gonzalez stated that he was "requesting that Lauralee Richmond be terminated for falsifying safety documents regarding driver observations and failing to follow paperwork protocol surrounding driver observations and safety meeting." Dkt. 21-5 at 88. Less than one month later, UPS named the Freeport facility its 2020 Group B (9-24 trucks) Operation of the Year.

In August 2022, Richmond filed this lawsuit against TeamOne, alleging a single claim of pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964. TeamOne has moved for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Harville v. City of Houston*, 945 F.3d 870, 874 (5th Cir. 2019) (cleaned up). To survive summary judgment, the nonmovant must

present evidence to support each essential element of her claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmovant's "burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quotation omitted). Rather, "the nonmovant must identify specific evidence in the record and articulate the precise manner in which that evidence supports his or her claim." *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (cleaned up). At the summary judgment phase, I construe "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso County*, 946 F.3d 717, 723 (5th Cir. 2020).

## ANALYSIS

### A.   THE PREGNANCY DISCRIMINATION ACT

Title VII forbids a covered employer from "discriminat[ing] against any individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The Pregnancy Discrimination Act ("PDA") "amended Title VII by explicitly including discrimination based on pregnancy and related medical conditions within the definition of sex discrimination." *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 859 (5th Cir. 2002); *see also* 42 U.S.C. § 2000e(k) (specifying that "[t]he terms 'because of sex' or 'on the basis of sex' [in Title VII] include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions"). "A claim brought under the PDA is analyzed like any other Title VII discrimination claim." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

Because Richmond's case is based on circumstantial evidence of pregnancy discrimination, it is analyzed under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Under this framework, the plaintiff must first create a presumption of discrimination by making out a prima facie case of discrimination." *Laxton*, 333 F.3d at 578 (cleaned up). Once a prima facie case of

8

pregnancy discrimination has been established, there is a presumption of discrimination, and the burden shifts to the employer to articulate some legitimate, non-discriminatory reason for the challenged employment action. *See McDonnell Douglas*, 411 U.S. at 802–04. If such a showing is made, the burden shifts back to the plaintiff to demonstrate that the articulated reason was merely a pretext for discrimination. *See id.* at 804.

To establish a prima facie case of pregnancy discrimination under the *McDonnell Douglas* framework, Richmond must show that she "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged . . . by the employer; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group." *Santos v. Wincor Nixdorf, Inc.*, 778 F. App'x 300, 302 (5th Cir. 2019) (cleaned up). TeamOne contends that Richmond cannot satisfy the fourth prong. Yet, I "need not address this issue. Even assuming, *arguendo*, that [Richmond] established a prima facie case of discrimination, her claim nonetheless fails because she has not rebutted [TeamOne]'s nondiscriminatory reasons for her termination." *Sun v. TETRA Techs., Inc.*, No. 22-20646, 2023 WL 6892227, at *1 (5th Cir. Oct. 19, 2023).

**B.    RICHMOND CANNOT ESTABLISH PRETEXT.**

It is undisputed that TeamOne's stated reasons for terminating Richmond—poor performance due to the alleged falsification of safety records and failure to maintain required documentation—are legitimate reasons for terminating an employee. *See Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002) ("Poor work performance is a legitimate, non-discriminatory reason for discharge."). Because TeamOne has carried its burden of articulating a legitimate, nondiscriminatory reason for its actions, Richmond "must provide some evidence, direct or circumstantial, to rebut *each* of [TeamOne]'s proffered reasons and allow the jury to infer that [TeamOne]'s explanation was a pretext for discrimination." *Rutherford v. Harris County*, 197 F.3d 173, 184 (5th Cir. 1999) (emphasis added)

9

(quotation omitted). This mean that Richmond must "show either: (1) that [TeamOne]'s reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that [TeamOne]'s reason, while true, is only one of the reasons for its conduct, and another motivating factor is [Richmond]'s protected characteristic (mixed-motives alternative)." *Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 259 (5th Cir. 2011) (cleaned up).

Richmond "must substantiate h[er] claim of pretext through evidence demonstrating that discrimination lay at the heart of [TeamOne's] decision." *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). "What's more, [Richmond] must produce substantial evidence of pretext. The quality and weight of the evidence determines whether it is substantial." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (cleaned up). "In conducting a pretext analysis, the court does not engage in second-guessing of an employer's business decisions." *Roberson-King v. La. Workforce Comm'n*, 904 F.3d 377, 381 (5th Cir. 2018) (quotation omitted). "[A]n employee's subjective belief of discrimination, however genuine, cannot be the basis of judicial relief." *EEOC v. La. Off. of Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995).

Richmond argues that TeamOne's decision to terminate her for falsifying records and failing to keep documentation "is akin to an organization firing a coach who has the best record in the league or cutting a player amidst an MVP season." Dkt. 24 at 28. Yet, teams fire winning coaches and cut valuable players all the time when they cross a line.[1] The record shows that Richmond crossed several lines. For

---

[1] Several examples that immediately come to mind are former Baylor head football coach Art Briles, former Arkansas head football coach Bobby Petrino, and former Los Angeles Dodgers pitcher Trevor Bauer. *See e.g.*, ESPN, *The timeline of Art Briles' downfall at Baylor before his hire at Grambling State* (Feb. 24, 2022, 11:15 PM ET), https://www.espn.com/college-football/story/_/id/33365146/the-line-art-briles-downf all-baylor-hire-grambling-state; ESPN, *Arkansas fires Bobby Petrino* (Apr. 10, 2012, 7:11 PM ET), https://www.espn.com/college-football/story/_/id/7798429/arkansas-razorbacks-fire-bobby-petrino-coach; Alden Gonzalez, *Los Angeles Dodgers cut ties with embattled pitcher Trevor Bauer*, ESPN (Jan. 6, 2023, 7:18 PM ET),

example, Richmond documented three coaching conversations with Fisher that Fisher stated never happened. *See* Dkt. 20 at 16 (citing various parts of the summary judgment record). This is not a circumstance where Richmond submitted documentation saying that Zavala coached Fisher when really it was Richmond who coached Fisher. TeamOne fired Richmond, in part, because she documented "a verbal warning" to Fisher "for failing to honk his horn," but Fisher said that "conversation never happened." Dkt. 21-5 at 88. Yet, Richmond does not even mention Fisher in her response brief. By failing to address TeamOne's assertions regarding Fisher, Richmond has left that fact undisputed. *See* FED. R. CIV. P. 56(e)(2). Richmond's failure to rebut this legitimate and nondiscriminatory reason for her termination is fatal to her discrimination claim.

Richmond also fails to mention Clevenger in her response brief, despite TeamOne citing Clevenger's constant complaints concerning Richmond's performance. Clevenger was not a TeamOne employee, but a UPS employee. And Clevenger's repeated complaints to TeamOne about Richmond's inattentiveness were an external source of dissatisfaction that seriously undercut any argument Richmond could make that TeamOne only started caring about her documentation issues once she announced her pregnancy. Again, by failing to respond to TeamOne's asserted facts about Clevenger's complaints, Richmond has left those facts undisputed. *See* FED. R. CIV. P. 56(e)(2).

Nor has Richmond mustered enough evidence to suggest that TeamOne only started caring about driver observations and safety documentation once she announced her pregnancy. Rather, the record shows why these issues were gravely important to TeamOne prior to Richmond's October 2, 2020 pregnancy announcment. As White wrote on March 4, 2021, after numerous complaints from Clevenger:

> While I know you know how important this stuff is, it takes on a whole other dimension when our largest customer is demanding that we pay

---

https://www.espn.com/mlb/story/_/id/35393987/los-angeles-dodgers-dfa-embattled-pitcher-trevor-bauer.

11

millions of dollars towards a settlement because we "breached" our contract with them when we didn't discipline the driver for hard brakes (not true) and the driver missed a couple of [Road to Rewards] modules in quarters prior to the crash.

Dkt. 21-5 at 75. The record shows that TeamOne had legitimate financial reasons to be concerned about documentation.

Finally, as TeamOne notes:

[Richmond] does not dispute that there were allegations of her forging safety documentation; that interviews conducted by Mr. Messmer and Ms. White with [Richmond]'s subordinates; and that drivers substantiated the reports that Richmond was, in fact, falsifying safety documentation. Nor does [Richmond] argue that the reliance by [TeamOne] on its independent investigation in determining that [Richmond] had falsified safety documentation was unreasonable.

Dkt. 26 at 4. In other words, even if Fisher was lying and Richmond really did coach him on the days that Fisher said no such conversation occurred, Richmond has produced no evidence suggesting that it was unreasonable for TeamOne to rely on Fisher's statements in terminating Richmond for falsifying documentation. *See Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010) ("In cases in which an employer discharges an employee based on the complaint of another employee, the issue is not the truth or falsity of the allegation, but whether the employer reasonably believed the employee's allegation and acted on it in good faith." (quotation omitted)).

Because Richmond has not produced substantial evidence of pretext, TeamOne is entitled to summary judgment.

## CONCLUSION

For the reasons discussed above, TeamOne's Motion for Summary Judgment (Dkt. 20) is granted. A final judgment will be issued separately.

SIGNED this 19th day of November 2024.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE